RANDOLPH L. HOWARD, ESQ.
Nevada Bar No. 006688
E. DANIEL KIDD, ESQ.
Nevada Bar No. 010106
**KOLESAR & LEATHAM**
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada  89145
Telephone:  (702) 362-7800
Facsimile:  (702) 362-9472
E-Mail:     rhoward@klnevada.com
            dkidd@klnevada.com

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation,<br><br>                   Plaintiff,<br><br>vs.<br><br>PEBBLE CREEK PLAZA PAD, LLC, a Nevada limited liability company, YOEL INY; NOAM SCHWARTZ; YOEL INY, Trustee of the Y&T INY FAMILY TRUST dated June 8, 1994; NOAM SCHWARTZ, Trustee of the NOAM SCHWARTZ TRUST dated August 19, 1999; D.M.S.I., L.L.C., a Nevada limited liability company; and DOES 1 through 10, inclusive,<br><br>                   Defendants. | CASE NO. 2:12-cv-01736-LRH-CWH<br><br>**DEFENDANTS' MOTION TO COMPEL RESPONSES TO WRITTEN DISCOVERY** |

Defendants, PEBBLE CREEK PLAZA PAD, LLC, a Nevada limited liability company, YOEL INY; NOAM SCHWARTZ; YOEL INY, Trustee of the Y&T INY FAMILY TRUST dated June 8, 1994; NOAM SCHWARTZ, Trustee of the NOAM SCHWARTZ TRUST dated August 19, 1999; and D.M.S.I., L.L.C., a Nevada limited liability company (collectively

"Defendants"), by and through their attorneys at the law firm of Kolesar & Leatham ("K&L"), hereby move this Court for an order compelling responses to written discovery. This Motion is made and based upon FRCP 37, LR 26-7, the attached Memorandum of Points and Authorities, the attached declaration of E. Daniel Kidd, Esq., the papers and pleadings on file herein, and any oral argument the Court may entertain in the premises.

DATED this 17th day of September, 2014.

KOLESAR & LEATHAM

By /s/ Randolph L. Howard
RANDOLPH L. HOWARD, ESQ.
Nevada Bar No. 006688
E. DANIEL KIDD, ESQ.
Nevada Bar No. 010106
400 South Rampart Boulevard
Suite 400
Las Vegas, Nevada 89145

Attorneys for Defendants

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION AND STATEMENT OF FACTS

This matter was commenced on October 13, 2012 when Plaintiff BRANCH BANKING AND TRUST COMPANY ("BB&T" or "Plaintiff") filed a Complaint based on diversity jurisdiction against Defendants alleging breach of a loan secured by a deed of trust and breach of the guarantees related to that loan. *See* [Doc.1]. The Complaint seeks a deficiency judgment, as a judicial foreclosure sale has already occurred on the property securing the loan. The property that secured the loan is located in Goodyear, Arizona ("Property").

BB&T acquired the loan at issue in this litigation after the FDIC was appointed receiver of the originating lender, Colonial Bank. The FDIC and BB&T entered into a Purchase and Assumption Agreement ("P&A Agreement") wherein BB&T purchased the loan, among other assets, and BB&T now seeks a deficiency judgment against the borrowers and guarantors. *See generally* Complaint. The Complaint also alleges that an Assignment of Security Instruments, Notes and Other Loan Documents was executed by the FDIC in favor of BB&T ("Assignment"). The Assignment was executed on September 28, 2011 and a copy was attached to the Complaint.

1   BB&T has also produced a copy of the P&A Agreement which did not contain all the final
2   schedules and only included a redacted copy of the document entitled Non Single Family Asset
3   Detail, which purportedly evidence the consideration paid for the loan.[1]  The unauthenticated,
4   unexecuted and undated Non Single Family Asset Detail appears to be part of only one of the
5   many schedules to the P&A Agreement (specifically, Schedule 4.15B).  Defendants have
6   diligently sought discovery regarding further information and documents related to the
7   acquisition of the loan from the FDIC.  However, Plaintiff has refused to produce further
8   evidence regarding the transaction.[2]

Plaintiff's Complaint specifically states that it is seeking a deficiency judgment "under
NRS 40.451 et seq."  As such, Defendants are entitled to discover any evidence in Plaintiff's
possession that relates to the defenses provided for in Nevada's deficiency legislation.  NRS
40.459(1)(c)'s sets forth a limitation on the amount a person may recover in a deficiency action
whenever there has been a transfer of the right to obtain a deficiency judgment. *See* NRS 40.459.
"For purposes of applying NRS 40.459(1)(c), a holder of the promissory note and deed of trust
may transfer that right to obtain a deficiency judgment as a bundle of rights secured in a
promissory note and deed of trust." *Sandpointe Apts. v. Eighth Jud. Dist. Ct.*, 129 Nev. Adv. Op.
87, 313 P.3d 849, 855 (2013).  "However, NRS 40.459(1)(c) now provides that if such a transfer
occurs, the successor holder will be limited in the amount that he will be able to recover in a
deficiency action." *Id.*  The limitation is the amount of the consideration paid. NRS 40.459(1)(c).

//

//

---

[1]   The P&A Agreement and redacted Non Single Family Asset Detail are attached hereto as **Exhibit 2**.  The P&A Agreement is Bates labeled BBT_PCP 000181 – BBT_PCP 000305.  The Non Family Asset Detail or Schedule 4.15B is Bates labeled BBT_PCP 000180.

[2]   The Nevada Supreme Court has recently confirmed a trial court judgment holding that the P&A Agreement alone are insufficient to prove the assignment of the loan. *See R & S St. Rose Lenders, LLC v. Branch Banking & Trust Co.*, 56640, 2013 WL 3357064 (Nev. May 31, 2013). In *R & S St. Rose Lenders*, the Nevada Supreme Court upheld the district court's conclusion that BB &T did not prove ownership of the loan through the P&A Agreement.  The court held: "[D]ue to the omission of the schedules of assets, the district court found that PAA did not transfer the Construction Loan to BB & T. We agree, and therefore conclude that the district court's decision to grant R & S Lenders' NRCP 52(c) motion after BB & T failed to carry its evidentiary burden to prove its ownership of the Construction Loan was not clearly erroneous." *Id.*

As set forth below, Plaintiff has failed to provide sufficient responses to certain discovery requests that relate to the consideration paid for the loan at issue in this litigation. As a result, Defendants have brought this instant motion.

## II. LEGAL ARGUMENT

### A. Legal standard for discovery disputes.

FRCP 37(a)(1) [Motion for an Order Compelling Disclosure or Discovery] provides that "on notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." FRCP 37(a)(1). "The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.*

With regard to a motion to compel a discovery response, a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FRCP 37(a)(3)(B). The motion may be made if:

    (i)     a party fails to answer an interrogatory submitted under Rule 33; or

    (ii)    a party fails to respond that inspection will be permitted--or fails to permit inspection--as requested under Rule 34. *Id.*

An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FRCP 37(a)(4).[3]

In the case at bar, Plaintiff has evasively responded to the certain interrogatories and requests for production, which are discussed in more detail below. Defendants' counsel has conducted the required "meet and confer" regarding the deficient discovery responses. *See* Declaration of E. Daniel Kidd, Esq., attached hereto as Exhibit 1. Plaintiff has not supplemented its responses as requested, and therefore, it has become necessary for Defendants to bring the instant Motion to Compel. Plaintiff's egregious stone wall response to routine discovery warrants an award of sanctions.

---

[3] Local Rule 26-7 [Discovery Motions] further provides that "[a]ll motions to compel discovery or for protective order shall set forth in full the text of the discovery originally sought and the response thereto, if any." LR 26-7. "Discovery motions will not be considered unless a statement of the movant is attached thereto certifying that, after personal consultation and sincere effort to do so, the parties have been unable to resolve the matter without Court action."

B. **Deficient discovery responses.**

1. **Plaintiff's responses to Pebble Creek Plaza Pad, LLC's First Set of Requests for Production.**

Plaintiff has served responses to Pebble Creek Plaza Pad, LLC's First Set of Requests for Production.[4] However, Plaintiff's responses to the following requests are evasive, incomplete, and thus require an order from the Court compelling Plaintiff to provide full responses.

**REQUEST FOR PRODUCTION NO. 13:**
Please produce all material documents, including emails, referring to or relating consideration paid by You to the FDIC (or any other entity) for the Promissory Note.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**
Plaintiff objects to this Request on the basis that the information sought does not appear reasonably calculated to lead to the discovery of admissible evidence and, further, may contain some materials which are privileged communications and attorney's work-product. As recently confirmed by the Nevada Federal District Court, the "consideration" paid by Plaintiff to acquire the loan at issue has no impact on the amount due and owing under the loan. *See Eagle SPE NV I, Inc., v. Kiley Ranch Communities*, 2014 WL 1199595 (D. Nev. 2014). Plaintiff further objects to the term "consideration" as used in this request as vague and ambiguous. To the extent the propounding party interprets that term to mean the money one party provides to another in return for something of value, Plaintiff asserts that it paid the book value for this loan, as well as any accrued interest due as of August 14, 2009, which is evidenced in Schedule 3.2 of the Purchase and Assumption Agreement. However, to the extent the term "consideration" is interpreted to include any monetary adjustments that may transpire between the FDIC and BB&T based upon the loss-share transaction between Plaintiff and the FDIC, then BB&T asserts that such an amount cannot be established at this time because a monetary adjustment is dependent on the performance of the asset over an eight (8) year period. Without waiving the foregoing objections, please refer to document previously produced as Bates stamped nos. BBT_PCP 000181 – BBT_PCP 000308 and BBT_PCP 000180.

**REQUEST FOR PRODUCTION NO. 64:**
The FDIC's and BB&T's documents that set forth or establish the amount exchanged in the transaction where BB&T acquired Colonial Bank's assets and liabilities from the FDIC, including all documents that establish or show how the amount exchanged was apportioned among the assets and liabilities, including the Loan subject to this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**
Plaintiff objects to this Request on the basis that it is overly broad in scope, unlimited as to point in time, the information sought does not appear reasonably calculated to lead to the discovery of admissible evidence and, further, may contain materials which are privileged communications and work product. Without waiving said objections, please refer to documents previously produced as Bates stamped nos. BBT_PCP 000181 – BBT_PCP 000308.

---

[4] A copy of Plaintiff's response to Pebble Creek Plaza Pad, LLC's First Set of Requests for Production is attached hereto as **Exhibit 3**.

**REQUEST FOR PRODUCTION NO. 65:**
A copy of the entire document or table/schedule/chart that included document Bates No. BBT_PCP 000180 (previously produced by BB&T), and all documents relied upon in drafting or preparing said document, and the documents utilized in making any of the calculations included therein.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**
Plaintiff objects to this Request on the basis that it is overly broad in scope, the information sought does not appear reasonably calculated to lead to the discovery of admissible evidence and further, contains information unrelated to the loan subject to this action or which are privileged communications and work product.

**REQUEST FOR PRODUCTION NO. 66:**
A copy of the Purchase and Assumption Agreement dated August 14, 2009 with all completed and final schedules and other attachments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**
Plaintiff objects to this Request on the basis that the information sought does not appear reasonably calculated to lead to the discovery of admissible evidence and, further, "recovered" is ambiguous. Discovery has ultimate and necessary boundaries and parties are not permitted to serve overly broad requests for information and documents on the theory that something relevant might turn up. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947). A discovery request must be "relevant to the subject matter involved in the pending action or reasonably calculated to lead to the discovery of admissible evidence." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir.1993), 5 F.3d at 1292 quoting FRCP 26(b)(1)). Loss share payments are for the benefit of BB&T, not the Defendants. Defendants are not a party to the Purchase and Assumption Agreement entered into by the FDIC and BB&T on August 14, 2009 ("P&A Agreement") and they are not beneficiaries of the agreement. Specifically, paragraph 6.4 of Exhibit 4.15B of the P&A states:

> 6.4 No Third Party Beneficiary. This Commercial Shared-Loss Agreement and the Exhibits hereto are for the sole and exclusive benefit of the parties hereto and their respective permitted successors and permitted assigns and there shall be no other third party beneficiaries, and nothing in Commercial Shared-Loss Agreement or the Exhibits shall be construed to grant to any other Person any right, remedy or claim under or in respect of this Commercial Shared-Loss Agreement or any provision hereof.

*See* P&A at 118, ¶6.4. No payments from the FDIC are, have been, or ever will be paid to BB&T for the benefit of Defendants. The Honorable Magistrate Cam Ferenbach held in *Branch Banking & Trust Company v. DMSI, LLC, et al*, Case Number 2:11-cv-01778-APGVCF that "discovery into any payments between the FDIC and plaintiff [BB&T] would be futile, as (1) defendants are not parties to or third party beneficiaries of the PAA [P&A], (2) defendants will not receive a "set-off" of any payments made, (3) there is no issue of possible "double recovery"...." *See* Dkt. 90, Case Number 2:11-cv-01778-APG-VCF. Without waiving said objections, please refer to documents previously produced as Bates stamped nos. BBT_PCP 000180 – BBT_PCP 000308.

//

Requests for Production Nos. 13, 64, 65 and 66 sought all material documents relating or referring to consideration paid for the subject loans, all material documents setting forth the amount exchanged in the transaction with the FDIC, and complete copies of the schedules to the P&A Agreement along with Schedule 4.15B. Plaintiff has improperly objected to these requests, and then provides a partial substantive response by referring to the P&A Agreement and Schedule 4.15B. Plaintiff's responses are evasive and incomplete.

The version of the P&A Agreement produced by Plaintiff does not include a copy of all the final schedules (nor any documents regarding adjustments, revisions, or changes made to the schedules). Moreover, Schedule 4.15B has been entirely redacted except for the purported entry regarding the subject loan, thus impeding the parties' ability to decipher the total amount of loans accounted for in Schedule 4.15B and whether any discounts or adjustments were made to the alleged book value. Also, Plaintiff has not produced any document evidence of the amount of money that was actually exchanged in the transaction with the FDIC. Plaintiff's 30(b)(6) witness, Brent Hicks, in a related matter, testified in regard to the P&A Agreement transaction that there were indeed adjustments made in BB&T's accounting records and that purchase accounting recorded the loans at their estimated fair value [which varies from "book value"].[5] *See* Hicks Deposition, pgs. 34-35. He further testified that the purchase price for the acquisition of the loans was made by adding up the numbers in the various schedules of assets and liabilities [which have not been produced], that there was a discount included in BB&T's bid, and that there was a schedule which set forth the initial amount transferred (similar to a closing statement). *Id.* at pgs. 87-89. BB&T's 10Q dated September 30, 2009, filed with the SEC and executed under penalty of perjury, further shows that there were adjustments made in the accounting of the P&A Agreement transaction.[6] Plaintiff has access to these documents that relate to the accounting applied to the P&A Agreement, but they have refused to produce the same in this litigation. Without a complete answer to these requests from Plaintiff, Defendants have been prevented from discovering relevant details regarding the transaction with the FDIC

---

[5] Excerpts of the deposition transcript of Brent Hicks ("Hicks Deposition) are attached hereto as **Exhibit 8**.

[6] *See* Expert report by Richard Gaudet, pgs. 8-13, attached hereto as **Exhibit 9**.

and all information that should be considered when determining the "consideration paid" element to Plaintiff's cause of action.

There is no binding case law that prevents the discovery of this evidence withheld by Plaintiff. Plaintiff relies on the case *Eagle SPE NV I, Inc., v. Kiley Ranch Communities*, 2014 WL 1199595 (D. Nev. 2014) in support of its objection. However, *Kiley* is a non-published federal case, which did not address this same discovery issue and is not applicable to this case. The *Kiley* court found that NRS 40.459(1)(c) could not "constitutionally apply to assignments made before the statute's effective date" because applying Subsection (1)(c) retroactively to the assignment which was made before the statute's effective date would impair pre-existing rights and responsibilities under the assignment and violate the Contract Clause. The *Kiley* case is distinguishable because in the case at bar there was a specific Assignment that occurred after the effective date of NRS 40.459(1)(c).[7] The *Kiley* court even noted that "[t]he application of the statute to post-enactment assignments presumably does not suffer from the same infirmity."

In fact, the instant case is similar to case *Eagle SPE NV 1, Inc. v. S. Highlands Dev. Corp.*, 2:12-CV-00550-MMD, 2014 WL 3845420 (D. Nev. Aug. 5, 2014). In *S. Highlands,* the court found that the "Contract Clause simply has no application because the assignment occurred after Subsection (1)(c) was enacted" and that "at enactment, there was no agreement" nor "rights and responsibilities for the statute to impair." *Id.* "Accordingly, any application of Subsection (1)(c) to the assignment at issue would be prospective, not retroactive, and would not implicate the Contract Clause." Based on the holding of *S. Highlands* supports Defendants' position that NRS 40.459(1)(c) is applicable to the subject loan and therefore Defendants must be permitted to discover evidence regarding any defenses.

In regard to the overly broad and/or "unduly burdensome objections, BB&T has failed to carry its burden that these are viable objections. The "mere statement by a party that the interrogatory [or request for production] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." *St. Paul Reinsurance Co., Ltd. v.*

---

[7] The effective date of NRS 40.459(1)(c) was June 10, 2011 and the Assignment was executed on September 28, 2011. Therefore, this case involves an Assignment and foreclosure sale that occurred after the effective date of the statute.

*Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000). "On the contrary, the party resisting discovery 'must show specifically how ... each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive.' " *Id.*; *see also Mitchell v. Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 458 (D.D.C. 2002) "the party opposing discovery must make a specific showing . . . as to why the production sought would be unreasonably burdensome."); *Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94, 109 (W.D.N.Y. 2000)("It is settled law that to support an objection based upon burdensomeness the objecting party must particularize the basis for the objection as generalized assertions are inadequate."). In this case, Plaintiff has not set forth sufficient reason why Defendants should be denied this discovery that directly relates to an applicable defense.

In sum, the evidence sought in these requests is relevant to the claims at bar as it directly relates to an accurate and complete determination of the consideration paid element of a deficiency action. Plaintiff should not be allowed to unilaterally select the evidence that they would like to produce, and withhold the remaining evidence that may support defenses in this action. Defendants request that Plaintiff withdraw its invalid objections and provide a full response to these requests.

### 2. Plaintiff's responses to Pebble Creek Plaza Pad, LLC's First Set of Interrogatories.

Plaintiff has served responses to Pebble Creek Plaza Pad, LLC's First Set of Interrogatories.[8] However, Plaintiff's responses to the following interrogatories are evasive, incomplete, and thus require an order from the Court compelling Plaintiff to provide full responses.

**INTERROGATORY NO. 9:**
State the amount of consideration paid to the FDIC by BB&T for the assignment of the rights related to and under the Loan Documents, and identify all documents evidencing said consideration.

**ANSWER TO INTERROGATORY NO. 9:**
Plaintiff objects to this Interrogatory on the basis that the information sought does not appear reasonably calculated to lead to the discovery of admissible evidence and, further, may contain some materials and/or communications which

---

[8] A copy of Plaintiff's response to Pebble Creek Plaza Pad, LLC's First Set of Interrogatories is attached hereto as **Exhibit 4**.

are privileged communications and attorney's work-product. The "consideration" paid by Plaintiff to acquire the loan at issue has no impact on the amount due and owing under the loan. *Eagle SPE NV I, Inc., v. Kiley Ranch Communities*, 2014 WL 1199595 (D. Nev. 2014). Plaintiff further objects to the term "consideration" as used in this request as vague and ambiguous. To the extent the propounding party interprets that term to mean the money one party provides to another in return for something of value, Plaintiff asserts that it paid the book value for this loan in the amount of $2,019,775.57, as well as any accrued interest due as of August 14, 2009, which is evidenced in Schedule 3.2 of the Purchase and Assumption Agreement. BBT_PCP181-305; BBT_PC0180. However, to the extent the term "consideration" is interpreted to include any monetary adjustments that may transpire between the FDIC and BB&T based upon the loss-share transaction between Plaintiff and the FDIC, then BB&T asserts that such an amount cannot be established at this time because a monetary adjustment is dependent on the performance of the asset over an eight (8) year period. Courts addressing this issue have held that the plain language of the PAA and a redacted Schedule 4.15B identifying the loan and its value, demonstrate the value of the consideration BB&T paid to acquire Colonial loans from the FDIC. *See e.g. Branch Banking and Trust Co. v. Frank*, 2013 WL 5428112 (D. Nev. 2013). Furthermore, to the extent this interrogatory is based upon Defendants' interpretation of AB 273/NRS 40.459, the *Kiley Ranch Communities* case confirmed that attempted application of the revised statute to loan assignments that were completed pre-enactment of the statute would violate the Contracts Claus. *See* 2014 WL 1199595.

Interrogatory No. 9 requested that Plaintiff state the "amount of consideration paid to the FDIC" for the subject loan, and identify documents evidencing consideration. Plaintiff's response stated the purported Book Value of the loan, and then concluded that "BB&T paid value for the subject loan" in that amount. The only evidence cited by Plaintiff was the P&A Agreement and Schedule 4.15B. Plaintiff does not state the amount that it actually paid to the FDIC, nor does Plaintiff cite to any document evidence that money was transferred to the FDIC for the subject loans. The amount actually paid and any documents referring to that amount are clearly relevant pursuant to NRS 40.459 (as set forth above). Therefore, Plaintiff's invalid objections should be stricken, and Plaintiff should be ordered to provide a full response to this interrogatory.

**INTERROGATORY NO. 23:**
State the amount exchanged in the transaction where BB&T acquired Colonial Bank's assets and liabilities from the FDIC, and identify all documents, including BB&T's internal accounting documents, that establish or show how the amount exchanged was apportioned among the assets and liabilities.

**ANSWER TO INTERROGATORY NO. 23:**
Objection. The Interrogatory is compound, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. See opinion rendered in *Eagle SPE NV I, Inc., v. Kiley Ranch Communities*, 2014 WL 1199595 (D. Nev. 2014); *see also* Response to Interrogatory No. 9.

Interrogatory No. 23 requested that Plaintiff state the amount exchanged in the transaction between BB&T and FDIC for the Colonial Bank assets and liabilities. The response to Interrogatory No. 23 objected to the interrogatory, and then referenced response to Interrogatory No. 9. Plaintiff does not state the amount of money that was actually paid to the FDIC in order to acquire the Colonial Bank assets/liabilities. As set forth above, this interrogatory seeks relevant information as the amount actually exchanged between the FDIC and BB&T will determine the consideration paid element in this deficiency action. In regard to the "overly broad" and "unduly burdensome" objections, BB&T has failed again to carry its burden that these are viable objections. Therefore, Defendants request that this Court order that provide a full response to this interrogatory.

3. **Plaintiff's responses to DMSI, LLC's First Set of Requests for Production.**

Plaintiff has served responses to DMSI, LLC's First Set of Requests for Production.[9] However, Plaintiff's responses to the following requests are evasive, incomplete, and thus require an order from the Court compelling Plaintiff to provide full responses.

**REQUEST FOR PRODUCTION NO. 2**:
Please produce copies of all material documents submitted to the FDIC in support of BB&T's bid for the purchase of Colonial Bank assets including without limitation, the Information Package.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2**:
Objection. This Requests is overly broad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, the objections set forth in BB&T's response to Request No. 1 are incorporated by reference into this response as if set forth fully herein.

**REQUEST FOR PRODUCTION NO. 3**:
Please produce the Pro Forma Statement associated with the Purchase and Assumption Agreement between you and the FDIC as related to Colonial Bank assets.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3**:
Objection. This Requests is overly broad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, the objections set forth in BB&T's response to Request No. 1 are incorporated by reference into this response as if set forth fully herein.

---

[9] A copy of Plaintiff's response to DMSI, LLC's First Set of Requests for Production is attached hereto as **Exhibit 5**.

1724972 (8237-14)               Page 11 of 17

**REQUEST FOR PRODUCTION NO. 4**:
Please produce copies of all material documents associated with your Form 10-Q, Quarter Ended September 30, 2009 as related to Note 2 at page 11 that is entitled "Covered Loans" including the entries under each of the three columns (*i.e.* value at Colonial $12,954; adjustment ($4,628); and recorded at BB&T $8,326).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**
Objection. This Requests is overly broad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, the objections set forth in BB&T's response to Request No. 1 are incorporated by reference into this response as if set forth fully herein.

In these requests for production, Defendants have sought documents related to the P&A Agreement transaction, including documents submitted to the FDIC regarding BB&T's bid, the Pro Forma Statement, and documents that BB&T relied on to prepare its 10-Q's statement regarding the P&A Agreement. These documents are relevant as they relate to the determination of the consideration paid element. As previously set forth, Plaintiff's 30(b)(6) witness testified that there were adjustments made in the accounting of the transaction, the loans were recorded at the estimated fair value, and that there was a discount associated with BB&T's bid. BB&T's 10Q also shows that there were adjustments made in the accounting of the P&A Agreement transaction. Defendants should be entitled to review these documents, as they directly relate to the calculation of the actual consideration paid for the loan. Nonetheless, Plaintiff has refused to produce the documents showing the adjustments made. Moreover, Plaintiff has failed to carry its burden in establishing that these requests are overbroad or unduly burdensome, such that a response cannot be made by Plaintiff. Therefore, Defendants request that this Court order that Plaintiff provide a full response.

    **4.  Plaintiff's responses to DMSI, LLC's First Set of Interrogatories.**

Plaintiff has served responses to DMSI's, LLC's First Set of Interrogatories.[10] However, Plaintiff's responses to all of the interrogatories in this set are incomplete, and thus require an order from the Court compelling Plaintiff to provide full responses. Plaintiff has objected to each of the interrogatories based on the argument that Defendants have surpassed their limit of interrogatories. Specifically, Plaintiff's response to the Interrogatory No. 1 is the following:

//

---

[10] A copy of Plaintiff's response to DMSI, LLC's First Set of Interrogatories is attached hereto as **Exhibit 6**.

**INTERROGATORY NO. 1**:
On or about September 7, 2012, you answered Interrogatory No. 5 in the case *BB&T v. Yoel Iny, et.al.*, Case No. 2:11-CV-01777- MMD-VCF ("Yoel Iny Interrogatory") as follows:

> **Interrogatory No. 5:**
> Please explain in detail the nature and/or form of any consideration you provided to the Federal Deposit Insurance Corporation or any other third-party to acquire the Loan and identify to whom you provided said consideration.
>
> **Answer to Interrogatory No. 5:**
> Plaintiff objects to this Interrogatory on the basis that the information sought does not appear reasonably calculated to lead to the discovery of admissible evidence and, further, may contain some materials and/or communications which are privileged communications and attorney's work-product. Plaintiff further objects to the term "consideration" as used in this request and defined as vague and ambiguous. The Nevada Supreme Court has yet to explain what that term means in either NRS 40.451 or NRS 40.459(1)(c). To the extent the propounding party interprets that term to mean the money one party provides to another in return for something of value in the context of a contractual exchange, Plaintiff asserts that such an amount cannot be established at this time. This inability does not arise from the fact that BB&T does not pay anything for such loans. Rather, it arises from the fact that BB&T's ultimate payment to the FDIC is dependent on the performance of the total assets over a ten (10) year period. Due to this temporal component, BB&T cannot determine what it will have paid to the FDIC for the entire group of assets and liabilities until 2019 or later when, by the terms of the purchase-and-assumption and loss-share agreements, the assets will have been fully resolved. It is therefore impossible at this time for BB&T to identify how much "consideration" it paid to the FDIC for any single loan.

Please state in full and complete detail your current answer to the above-interrogatory, if it has changed.

**RESPONSE TO INTERROGATORY NO. 1:**
BB&T hereby objects to all interrogatories propounded in D.M.S.I. LLC's First Set of Interrogatories because the aggregate number of interrogatories propounded by Defendants exceeds the allowable number of twenty-five (25) under Fed. R. Civ. P. 33 ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories...") Nominally separate parties, such as Pebble Creek Plaza Pad, LLC ("PCPP") and D.M.S.I., LLC ("DMSI") are considered to be one party for the purposes of the interrogatory number limitation. *See* Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.); *see also Zito v Leasecomm Corp*, 233 FRD 395, 399 (SDNY2006); *Vinton v Adam Aircraft Industries, Inc*, 232 FRD 650, 664 (D Colo. 2005). Here, Defendant PCPP propounded twenty-five separate interrogatories to BB&T on or about February 24, 2014. Those Interrogatories generally dealt with BB&T's right to enforce the underlying contracts, its transactions with the FDIC, BB&T's claim for damages, and were otherwise not specifically tailored to PCPP in any unique capacity. Indeed, in this case, the same attorneys represent both PCPP and DMSI who have asserted nearly identical defenses to repayment of the loan —especially in terms of their written discovery. Similarly, the interrogatories propounded by DMSI concern general issues related to BB&T's transaction with the FDIC, BB&T's responses to interrogatories in other cases, and/or are not tailored in any respect to

DMSI. Indeed, DMSI's Interrogatory Nos. 13-16 specifically relate to PCPP's interrogatories. Accordingly, Defendants are limited to 25 total interrogatories. "When a party believes that another party has asked too many interrogatories; the party to which the discovery has been propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond." *Houman Allahverdi, MD. v. Regents o/the Univ. o/New Mexico*, 228 F.R.D. 696, 697 (D.N.M. 2005). Therefore, because BB&T may not selectively answer certain questions without waiving the objection, BB&T hereby asserts this objection to each of BB&T's responses to DMSI's interrogatories. BB&T further objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, and the information sought is not reasonably calculated to lead to the discovery of admissible evidence as similar discovery requests have been routinely rejected by courts as beyond the scope of discovery. *See Branch Banking and Trust Company v. D. M.S.L, LLC, et al.*, case Number 2:11-cv-01778-APG-VCF, Dkt. 90 (D. Nev June 21, 2013); *Branch Banking and Trust Company v. Maxwell*, WL 1136578 (11th Cir. 2013); *see also Eagle SPE NV 1, Inc. v. Kiley Ranch Communities*, et al, 2014 WL 1199595 (D. Nev. Mar. 24, 2014); *Branch Banking and Trust v. Desert Canyon Phase II LLC*, 2014 WL 2468610 (D. Nev. June 2, 2014); *Branch Banking and Trust Co. v. Regena Homes, LLC et al.*, case no. 2:12-cv-00451-RCJ-GWF, Dkt. 110 (D. Nev. July 23, 2014) (rejecting applicability of defendants' arguments related to consideration paid to the FDIC because "the 2011 amendment to section 40.459(1)(c) does not apply to assignments of debt predating the effective date of the statute on June 10, 2011, and that the statute's application to such an assignment would violate the Contract Clause.").

BB&T's responses to Interrogatories Nos. 2 – 21 each referred to the objection set forth in response to Interrogatory No. 1, and no substantive responses were provided. Therefore, Plaintiff has refused to respond to these interrogatories based on the argument that the Defendants are similarly situated and that Defendants are only entitled to 25 total interrogatories, not 25 interrogatories for each defendant.

Plaintiff's cites to Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.) in support of its objection. A copy of § 2168.1 (Number of Interrogatories) is attached hereto as **Exhibit 7**. The relevant portion of this section states the following:

> Another possible area of disagreement is counting parties. The limitation on number of depositions, also imposed in 1993, speaks in terms of "sides" rather than parties. Because it frequently happens that a number of parties on the same side are represented by a single attorney and in that sense act in unison, this concept might be attractive in the interrogatory setting as well. In instances of legally related parties such as a parent corporation and its subsidiary, this could be particularly attractive. But the basic problem is more widespread. Consider, for example, a situation in which ten people injured in a bus crash sue the bus company in a single suit represented by the same lawyer. Should they be considered one party or ten for purposes of the interrogatory limitation? The best

result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25–interrogatory limitation.

*Id.* Notably, § 2168.1 does not state that it is widely accepted that similarly situated parties only get 25 total interrogatories total. Instead, it merely states that this is "another possible area of disagreement" and that "in some instances nominally separate parties should be considered one party for purposes of the 25–interrogatory limitation." Plaintiff does not cite to any authority that this suggested interpretation of the rule has been accepted in the Ninth Circuit or by any Nevada court. Furthermore, the strict language of FRCP 33 allows each defendant party to propound 25 interrogatories. *See St. Paul Fire and Marine Insurance Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288, 289 (D. Mass. 2003).

The cases cited by Plaintiff are also distinguishable from the case at bar. In *Zito v Leasecomm Corp,* 233 FRD 395, 399 (SDNY 2006), the court found that it "need not decide, however, whether the plain language of Rule 33(a) must be strictly applied in all circumstances" and that "even if the interrogatories do not exceed the number permitted by rule, they are abusive." *Id.* In this case, DMSI's First Set of Interrogatories does not amount to abusive, as it only obligates Plaintiff to respond to 21 additional interrogatories. Thus, *Zito* is not applicable to the case at bar.

In *Vinton v Adam Aircraft Industries, Inc,* 232 FRD 650, 664 (D Colo. 2005), the Plaintiff took the position that two of the defendants were "alter egos, and, in essence, should be treated as a single, unified entity." *Id.* However, in this case, there is no evidence that the parties are a single unified entity, or an alter ego. Indeed, they are distinct entities/persons, and should be allowed their own set of 25 interrogatories. There is no evidence and none exists which abrogates the distinction between the borrower and guarantors in this case. They are truly separate and district parties. Therefore, *Vinton* is not applicable either.

//
//
//
//

Based on the foregoing, Defendants' request that this Court issue an order compelling Plaintiff to respond to DMSI, LLC's First Set of Interrogatories.[11]

### III. CONCLUSION

In sum, Defendants have diligently propounded discovery on relevant factual issues in this action, but Plaintiff has failed to provide complete and adequate responses to the aforementioned interrogatories and requests for production. Accordingly, Defendants request that this Court enter an order compelling Plaintiff to provide full responses to the written discovery mentioned above.

DATED this 17th day of September, 2014.

**KOLESAR & LEATHAM**

By _/s/ Randolph L. Howard_
RANDOLPH L. HOWARD, ESQ.
Nevada Bar No. 006688
E. DANIEL KIDD, ESQ.
Nevada Bar No. 010106
400 South Rampart Boulevard
Suite 400
Las Vegas, Nevada 89145

Attorneys for Defendants

---

[11] Plaintiff also asserts objections related to relevance and overbroadness. However, as set forth above, discovery issues related to the P&A Agreement are relevant, and thus Plaintiff must be required to respond to these requests. Furthermore, Plaintiff has not carried its burden in showing that these interrogatories are so overbroad or unduly burdensome that Plaintiff cannot respond.

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Kolesar & Leatham and that on the 17th day of September, 2014, I caused to be served a true and correct copy of foregoing **DEFENDANTS' MOTION TO COMPEL RESPONSES TO WRITTEN DISCOVERY** in the following manner:

(ELECTRONIC SERVICE) Pursuant to Rule 5(D) of the Nevada Rules of Civil Procedure, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

*/s/ Christi Colucci*
An Employee of KOLESAR & LEATHAM